# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROBERT RIMEL,**

    **Plaintiff,**

**v.**               **Case No: 6:15-cv-2191-Orl-41KRS**

**UBER TECHNOLOGIES, INC. and
RASIER LLC,**

    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STRIKE CLASS ACTION ALLEGATIONS (Doc. No. 23)** |
| **FILED:** | **April 1, 2016** |

## I. BACKGROUND.

  Plaintiff, Robert Rimel, filed an Amended Class Action Complaint (Doc. No. 7) against Defendants, Uber Technologies, Inc. ("Uber") and Rasier, LLC ("Rasier").  He alleges that he began working as an uberX driver for Uber in November 2014.  *Id.* at 5.  He further alleges that Uber misclassifies its drivers as independent contractors rather than employees.  *Id.* at 7.  He alleges that, as a result of this misclassification, Uber drivers are not properly compensated.  He alleges claims for Tortious Interference with Prospective Business Relations (Count I), Breach of Contract (Count II), Unjust Enrichment (Count III), Conversion (Count IV), Unfair Competition

(Count V), Fraud and Misrepresentation (Count VI), and violation of Florida State Labor Law (Count VII). *Id.* at 12-16. He seeks to represent a class comprised of all individuals who are currently or have worked for Defendants as drivers in the State of Florida. *Id.* at 9. The case is before the Court under its diversity jurisdiction because Rimel alleges that he is a resident of Florida, Uber is a citizen of Delaware and California, Raiser is a citizen of California and the amount in controversy exceeds $75,000. Doc. No. 7, at 4.

Defendants state that Uber is a technology company which acts as a conduit between riders looking for transportation and drivers looking for rides. Uber provides the technology through its smartphone application (the "Uber App"), which allows riders and drivers to connect based on their location. The Uber App is available to riders and drivers in over 100 cities across the country. Doc. No. 23-1, at 1-2. Defendants further state that Rasier is the entity that contracts with drivers in Florida, including Rimel, using the uberX platform. Doc. No. 23-1, at 1. Michael Colman, an Operations Specialist at the headquarters of Uber, avers that any driver who wishes to access the uberX platform to book passengers must first enter into the "Rasier Software Sublicense & Online Services Agreement" ("Services Agreement"). *Id.* at 2. The Services Agreements contain an arbitration provision and a waiver of the right to bring collective or class actions. Doc. No. 23-1, at 21-26 (June 21, 2014 Services Agreement); Doc. No. 28-4, at 15-20 (November 10, 2014 Services Agreement); Doc. No. 28-5, at 16-22 (December 11, 2015 Services Agreement).

Defendants filed the above-referenced motion seeking to compel Rimel to arbitrate his individual claims. The motion was supported by the Declaration of Michael Colman. Doc. No. 23-1. Rimel opposes the motion. Doc. No. 28. His response is supported by the Declaration of Brittany Weiner, one of his attorneys. Doc. No. 28-1. With leave of Court, Defendants filed a reply memorandum supported by a Supplemental Declaration of Michael Colman. Doc. Nos. 49,

49-1.  Rimel filed a motion requesting leave to file a surreply to address eight legal arguments. Doc. No. 51.  He requested leave to file evidence on his financial circumstances, but he did not request leave to file further evidence regarding his acceptance of various Services Agreements.  *Id.* The Court granted in part and denied the motion to file a surreply, stating that it would consider the legal arguments set forth in the motion for leave to file the surreply.  Doc. No. 54.  Counsel for the parties subsequently filed a series of notices of supplemental authority, which also addressed in argument the application of additional cases to the present dispute.  Doc. Nos. 31, 39, 40, 41, 59. The supplemental legal arguments were not authorized filings and, therefore, they will not be considered.   I will, however, consider the new court decisions filed with these notices.

The motion is now ripe for resolution.   It was referred to me for issuance of a Report and Recommendation.

## II.    LEGAL STANDARD.

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.  "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption —'a national policy'—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006)).

"Importantly, parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable. The Supreme Court has upheld these so-called 'delegation provisions' as valid, and explained that they are severable from the underlying agreement to arbitrate." *Parnell*, 804 F.3d at 1146-47 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("*Rent-A-Center*"), and *Buckeye Check Cashing, Inc.,* 546 U.S. at 445)

(internal citations omitted).   A presumption of arbitrability does not apply to agreements delegating authority over gateway issues.   *See id.*   "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."   *Id.* (citations omitted).

**III.   STATEMENT OF FACTS**.

Michael Colman avers as follows:

To enter into a Services Agreement and gain access to the uberX platform, a driver must first log into the Uber App using a unique username and password selected by the driver. After completing the sign-up process, the driver is given an opportunity to review the Services Agreement by clicking a hyperlink presented on the screen with the Uber App.   To advance past that screen, the driver has to click "YES, I AGREE" to the Services Agreement.   After clicking "YES, I AGREE" to the Services Agreement, the driver must confirm acceptance a second time.   *Id.*   After clicking "YES, I AGREE" a second time, drivers are able to access the Uber App, and the Services Agreement is sent to the "Driver Portal," where the driver can access the agreement at any time. *Id.* at 3.   When a driver agrees to a Services Agreement under the Uber App, an electronic receipt is generated including a date and timestamp indicating acceptance.   *Id.*

When a new version of a Services Agreement is issued, a driver cannot gain access to the uberX platform unless he or she affirmatively accepts the new version of the Services Agreement in the manner discussed above.   Doc. No. 49-1, at 1.

The Services Agreements provide that within 30 days after accepting the agreement, a driver can opt out of the arbitration provision of a Services Agreement.   Doc. No. 23-1, at 25; Doc. No. 28-4, at 19; Doc. No. 28-5, at 22.   Uber maintains business records reflecting the names of individuals who have elected to opt out of a particular arbitration provision.   Doc. No. 23-1, at 2.

Uber also maintains databases that reflect the dates and times that drivers accepted Services Agreements.   *Id.* at 3.   These databases are automatically updated as drivers accept new or amended Services Agreements.   *Id.*   Colman has reviewed these Uber databases.   They reflect that Rimel electronically accepted only the June 21, 2014 Services Agreement.   Doc. No. 49-1, at 2; *accord* Doc. No. 23-1, at 29 (showing that Rimel accepted the June 21, 2014 Services Agreement on November 8, 2014).   Colman has also reviewed Uber business records reflecting individuals who elected to opt out of a particular arbitration provision.   Those records show that Rimel did not opt out of the arbitration provision in the June 21, 2014 Services Agreement within 30 days after his acceptance of that agreement.   Doc. No. 23-1, at 4.

In the response to the motion, counsel for Rimel states that Rimel "accepted three Uber agreements:   the June 21, 2014 Agreement, the November 8, 2014 Agreement [*sic*], and the December 11, 2015 Agreement," Doc. No. 28, at 2, but no evidence was submitted supporting that representation.   Rimel did present evidence that he sent an email to "OPTOUT@UBER.COM" on December 16, 2015 stating, "I inten[d] to opt out of the arbitration provision[.]"   Doc. No. 28-1, at 1; Doc. No. 28-2.

Colman avers that Rimel did not accept the December 11, 2015 Services Agreement, noting that Uber's business records reflect no activity by Rimel after August 2015.   Doc. No. 49-1, at 2.   Thus, the December 16, 2015 opt-out email was not sent within 30 days after Rimel accepted the June 21, 2014 Services Agreement.   Doc. No. 23-1, at 4.

**IV.    ANALYSIS**.

Defendants ask that the Court enforce the arbitration and waiver of class action provisions in the June 21, 2014 Services Agreement and dismiss this case so that Rimel can litigate his individual claims in arbitration.   In response, Rimel argues that (1) the arbitration provision is not

applicable because he opted out of it, (2) the arbitration provision and its delegation clause are unconscionable, and (3) there is not clear and unmistakable evidence that the parties agreed to the delegation clause.  I will begin first with the question of which arbitration provision(s) Rimel accepted.  Thereafter, I will address Rimel's unconscionability arguments and then turn to the enforceability of the delegation provision.   I will then address Defendants' argument that the Court should strike the class action allegations from the amended complaint, compel Rimel to submit his individual claims to arbitration and, thereafter, dismiss this case.

> A.    *Rimel Accepted the Arbitration Provision in the June 21, 2014 Services Agreement But Not the Arbitration Provision Contained in the December 15, 2015 Services Agreement.*

Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   "[A] party ordinarily will not be 'compelled to arbitrate unless that party has entered into an agreement to do so.'"   *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008) (quoting *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001)).  Whether the parties have entered into an arbitration agreement is a question for resolution by the court, not by the arbitrator.  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008).

In the present case, the parties do not dispute that Rimel entered into the Arbitration Provision contained in the June 21, 2014 Services Agreement.[1]   The Arbitration Provision in the

---

[1] The June 21, 2014 Services Agreement contains an arbitration provision (the "Arbitration Provision") that requires transportation providers, if they do not opt out, to arbitrate all disputes (with certain exceptions not relevant here) arising out of or related to the agreement or their relationship with Uber, including disputes alleging breach of contract, wage and hour claims, unfair competition, or any other claims brought under similar state and federal statutes.  The Arbitration Provision, in relevant part, provides as follows:

IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company [Rasier] or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

. . . .

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship. . . .

**You and the Company agree to resolve any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.** . . .

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law . . . . In all cases where required by law, the Company will pay the arbitrator's and arbitration fees.  If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law. . . .

**Arbitration is not a mandatory condition of your contractual relationship with the Company.   If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision . . . within 30 days of the date this Agreement is**

June 21, 2014 Services Agreement requires arbitration of the claims Rimel alleges in the amended complaint.   Doc. No. 23-1, at 22.

The parties do dispute whether Rimel also accepted the arbitration provision contained in the December 11, 2015 Services Agreement.   "The determination of whether a contract exists between the parties is governed . . . by state law."   *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012).   Rimel argues that California law should govern the December 15, 2015 Services Agreement because that agreement provides that it will be governed by California law.   Doc. No. 28-5, at 15.   However, the December 11, 2015 Services Agreement states that "[t]he choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the Federal Arbitration Act." *Id.*

In diversity cases, such as this one, federal courts apply the choice of law rules of the forum state.   *Suarez v. Uber Tech., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), *appeal docketed*, No. 16-13263 (11th Cir. June 6, 2016). Florida follows the *lex loci contractus* rule, which looks to the place where the contract was executed.   *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla.1988).   The undisputed evidence establishes that Rimel never executed the December 15, 2015 Services Agreement by checking "YES, I AGREE" in the manner described in the Statement of Facts above.   Under Florida law, a contract is made when there is proof of offer, acceptance and consideration.   *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D.

---

**executed by you . . . .**

Doc. No. 23-1, at 21-25 (bold typeface in original).

Fla. 2000).   Because Rimel did not accept the December 11, 2015 Services Agreement and the arbitration provision contained therein, no contract was made.[2]   Because Rimel did not enter into the December 11, 2015 Services Agreement and its arbitration provision, his attempt to opt out of that agreement and arbitration provision was not effective.   *Cf. Bruster v. Uber Tech., Inc.*, No. 15-CV-2653, 2016 WL 2962403, at *3 (N.D. Ohio May 3, 2016) (finding that the plaintiff's opt out attempt was not successful because he did not validly accept the December 11, 2015 Services Agreement), *reconsideration denied*, Doc. No. 28 (N.D. Ohio Aug. 2, 2016).[3]

> B.      *The Arbitration Provision is Not Unconscionable*.

Rimel contends that the Arbitration Provision and its delegation clause are procedurally and substantively unconscionable.   Because this is a challenge specifically to the Arbitration Provision and the delegation clause, it appears that this issue must be resolved by the Court rather than the arbitrator.   *Buckeye Check Cashing, Inc.*, 546 U.S. at 445.

> 1.      <u>Florida Law Applies to the Arbitration Provision</u>.

The "General" section of the June 21, 2014 Services Agreement provides that "[t]he interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction."   Doc. No. 23-1, at 27.   Nevertheless, the choice of California law in this agreement does not apply to the Arbitration Provision.

---

[2]   Because Rimel has not presented evidence to support his assertion that he agreed to the December 11, 2015 Services Agreement and the arbitration provision contained therein, he has not sufficiently placed the formation of that agreement at issue and, therefore, a trial is not required under § 4 of the FAA.   *See Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (11th Cir. 1995).

[3]   Rimel's argument that the terms of the December 11, 2015 Services Agreement apply because that agreement states that is supersedes earlier agreements also fails.   One party may not unilaterally modify the terms of an existing contract.   *See, e.g., Kuhne v. Fla. Dept. of Corr.*, 745 F.3d 1091, 1096 (11th Cir. 2014).   Moreover, the Arbitration Provision specifically states that it survives after the agreement terminates.   Doc. No. 23-1, at 22.

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Rent-A-Center*, 561 U.S. at 70 (quoting *Buckeye Check Cashing, Inc.* 546 U.S. at 445) (internal quotation marks omitted). The terms of the June 21, 2014 Services Agreement support severability of the Arbitration Provision.   Doc. No. 23-1, at 25 ("This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement.").

The California choice-of-law provision in the June 21, 2014 Services Agreement is not included in the Arbitration Provision.   Accordingly, the Arbitration Provision, when severed from the other provisions in the agreement, has no choice-of-law provision.   *Suarez*, 2016 WL 2348706, at *4 (citing, among other decisions, *Sena v. Uber Tech., Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445, at *4-5 (D. Ariz. Apr. 7, 2016), *reconsideration denied*, Doc. No. 28 (D. Ariz. May 3, 2016)); *Varon v. Uber Tech., Inc.*, No. MJG-15-3560, 2016 WL 1752835, at *3 (D. Md. May 3, 2016), *reconsideration denied*, Doc. No. 32 (D. Md. July 20, 2016).

Therefore, Florida's *lex loci contractus* rule applies to determine the law governing the Arbitration Provision.   Although the parties do not directly address the question of where Rimel accepted the June 21, 2014 Services Agreement and its Arbitration Provision, because he resides in Florida and worked as an uberX driver in Florida, the logical inference is that he accepted the agreement and the Arbitration Provision by clicking "Yes, I Agree" while he was in Florida. Therefore, Florida law applies to the Arbitration Provision.

### 2.   Unconscionability.

"Under Florida law, '[b]efore a court may hold a contract unconscionable, it must find that it is *both* procedurally and substantively unconscionable.'"   *Suarez*, 2016 WL 2348706, at *4 (emphasis in the original) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278,

283-84 (Fla. 1st Dist. Ct. App. 2003)). "The test for procedural unconscionability examines the manner in which the contract was entered, and the court must determine whether the complaining party had a meaningful choice at the time of the contract." *Id*. (citing *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. 4th Dist. Ct. App. 2005), and *Gainesville Health Care Ctr., Inc.*, 857 So. 2d at 284)). "The substantive component focuses on the terms of the agreement itself in order to determine whether those terms are unreasonable and unfair." *Id*. (citing *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st Dist. Ct. App. 1999), and *Fonte*, 903 So. 2d at 1025).

### a.    **Procedural Unconscionability**.

The Arbitration Provision is not procedurally unconscionable because Rimel had the absolute right to opt out of the Arbitration Provision within 30 days after he accepted it on November 8, 2014.   The opt-out clause was prominently displayed in bold typeface under the heading "**viii. <u>Your Right to Opt Out Of Arbitration</u>.**"   Doc. No. 23-1, at 25.   The mechanism for opting out of the Arbitration Provision was straightforward and simple to accomplish.   All Rimel had to do within 30 days from the date he executed the June 21, 2014 Services Agreement was to either (1) send electronic mail to optout@uber.com, stating his name and intent to opt out of the Arbitration Provision or (2) send a signed and dated letter by U.S. Mail, other nationally recognized delivery service or by hand delivery to the stated address for Rasier stating his intent to opt out of the Arbitration Provision. *Id*.   Finally, the opt-out clause also states that Rimel would not be subject to retaliation if he exercised his right to opt out of the Arbitration Provision. *Id*.   "Even as the party with less bargaining power, [Rimel] had the ability to reject the Arbitration Provision without consequence to [his] relationship with Defendant[s]." *Suarez*, 2016 WL 2348705, at *4. Accordingly, the Arbitration Provision is not procedurally unconscionable.

b.      **Substantive Unconscionability**.

Rimel argues that the Arbitration Provision is unfair because the prohibition against collective and class actions violates the National Labor Relations Act, citing *Lewis v. Epic Sys. Corp.*, No. 15-2997, 2016 WL 3029464 (7th Cir. May 26, 2016). *Lewis* is not binding on this Court. The decision is also distinguishable because the arbitration clause at issue in that case was mandatory while the Arbitration Provision in this case permitted Rimel to opt out. Therefore, *Lewis* is not persuasive authority establishing that the Arbitration Provision at issue here is substantively unconscionable.

Rimel also asserts that the Arbitration Provision is unfair because the prohibition against private attorney general actions violates California public policy. As explained above, however, Florida law not California law governs in this case. Counsel have not cited a "private attorney general" provision in Florida law, similar to the provision under California law on which Rimel relies.

In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the United States Supreme Court held that a California rule providing that an arbitration agreement was unconscionable and unlawfully exculpatory under California law because it disallowed class-wide procedures was preempted by the FAA. *Id.* at 337-38, 352. The Eleventh Circuit subsequently concluded that an arbitration provision containing a waiver of class actions, including private attorney general actions, was valid, albeit without addressing the arguments Rimel asserts under California law. *Kaspers v. Comcast Corp.*, 631 F. App'x 779, 784 (11th Cir. 2015) (unpublished decision cited as persuasive authority). The Florida Supreme Court has similarly held as follows: "In light of the United States Supreme Court's recent decision in *Concepcion,* we conclude that the FAA preempts invalidating the class action waiver in this case on the basis of the waiver being void as against public policy."

*McKenzie Check Advance of Fla., LLC v. Betts*, 112 So. 3d 1176, 1188 (Fla. 2013).   All of these cases support a finding that Rimel's public policy argument based on waiver of private attorney general representative actions is preempted by the FAA under Florida law.

Finally, Rimel argues that the Arbitration Provision is substantively unconscionable because he "would be subject to hefty arbitration fees of a type he would not face in court because the arbitration fee provisions require costs to be shared."   Doc. No. 28, at 15 (citing Doc. No. 23-1, at 21, 24).[4]   He relies on the JAMS filing fee notice in support of this argument.   *See* Doc. No. 28-6.   Counsel for Defendants correctly notes, however, that the Arbitration Provision does not require the parties to use JAMS to arbitrate the dispute.[5]

Rimel has not met his burden of showing that fees he might incur during arbitration would be prohibitively expensive.   *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).   Moreover, he can raise objections to any fees he is required to pay to the arbitrator, who may resolve those issues when the amount to be paid is no longer speculative.   *See Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1262 (11th Cir. 2003) ("Once the arbitrator has reached the issues of costs and fees, those items will no longer be speculative, and any issue presented thereby will be ripe for decision.").   Accordingly, the possibility that Rimel will incur fees for arbitration

---

[4] The Arbitration Provision provides, in pertinent part, as follows:

> In all cases where required by law, the Company [Rasier] will pay the Arbitrator's and arbitration fees.   If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law.

Doc. No. 23-1, at 24.

[5] The Arbitration Provision permits the arbitrator to be selected by mutual agreement.   If the parties cannot agree on an arbitrator, an arbitrator with JAMS will be selected.   Doc. No. 23-1, at 23.

that exceed those he would incur in litigation in this Court does not render the Arbitration Provision substantively unconscionable.

       C.     *The Delegation Provision.*

The Arbitration Provision contains the following delegation provision:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.   This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of the Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.  All such matters shall be decided by an Arbitrator and not by a court or judge.

Doc. No. 23-1, at 22.   This type of provision had been described as "an agreement to arbitrate the 'gateway' question of 'whether [the arbitration agreement] covers a particular controversy.'"   *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (quoting *Rent-A-Center*, 561 U.S. at 68-69) (alteration in the original).

    "Courts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence the parties manifested their intent to arbitrate a gateway question."   *Id.* (quoting *Rent-A-Center*, 561 U.S. at 69).   Rimel contends that there is no clear and unmistakable evidence that the parties agreed to the delegation provision.   Doc. No. 28, at 12-13.[6]   He points

---

[6] Rimel also argues that the delegation clause was hidden in the Services Agreement.   Doc. No. 28, at 16.   This argument fails because the delegation clause is contained in the section of the Arbitration Provision that addresses "i. How This Arbitration Provision Applies[,]" and it immediately follows the admonition in bold typeface that "**This Arbitration Provision requires all such disputes to be resolved only by an arbitrator . . . and not by way of court or jury trial . . . .**"   Doc. No. 23-1, at 22. Additionally, the undisputed evidence is that Rimel had the ability to review the June 21, 2014 Services Agreement through his Driver Portal for the full 30-day opt-out period, which gave him ample opportunity to read and fully consider the 5-page Arbitration Provision.

to the following language in the "General" section of the June 21, 2014 Services Agreement, which

provides as follows:

> The interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction, and any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California.

Doc. No. 23-1, at 27.   He argues that the delegation language in the Arbitration Provision placing

all disputes in the control of the arbitrator, not the court, is incompatible with the parties' agreement,

in the "General" section of the June 21, 2014 Services Agreement, committing disputes to the

exclusive jurisdiction of courts in the City and County of San Francisco, Florida.

Careful reading of the June 21, 2014 Services Agreement shows that there is no

inconsistency.   The Arbitration Provision excludes from arbitration several categories of causes of

action not applicable in this case.   Doc. No. 23-1, at 22-23.   The "General" provision establishes

where the claims that are excluded from arbitration can be heard.   The Arbitration Provision

governs arbitrable claims, which include the following:

> [D]isputes arising out of or related to your relationship with the Company, including termination of the relationship.   This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, . . . Fair Labor Standards Act, . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

Doc. No. 23-1, at 22.   The delegation provision in the Arbitration Provision is evidence of the

parties' clear and unmistakable agreement that disputes not expressly excluded from arbitration will

be decided by the arbitrator, not a court.   *See Sena*, 2016 WL 1376445, at *3-4 (distinguishing

*Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015)); *Varon*, 2016 WL 1752835,

at *6.

*D.     The Class Action Waiver and Further Proceedings.*

Defendants ask that the Court strike the class allegations from the amended complaint and compel Rimel to arbitrate his individual claims.   It appears that the Court can resolve the issue of whether the class action waiver in the Arbitration Provision should be enforced, rather than deferring this issue to the arbitrator.   *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005).

In *Jenkins*, the Eleventh Circuit upheld a class action waiver in an arbitration agreement. *Id.* at 877-78 (citing *Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 819 (11th Cir. 2001)). In *Suarez*, the court found that waiver of collective and class action claims was enforceable and required the plaintiff to submit his individual claims to arbitration.   *Suarez*, 2016 WL 2348706, at *5.   Based on these authorities, Defendants' request that the Court strike Rimel's class action allegations is well taken.

When a court concludes that all of the claims raised in a plaintiff's complaint must be submitted to arbitration, the court may dismiss with prejudice the plaintiff's complaint.   *Coffey v. Kellogg Brown & Root*, No. CIVA 1:08CV2911JOF, 2009 WL 2515649, at *15 (N.D. Ga. Aug. 13, 2009).   For the reasons discussed herein, all of Rimel's individual claims are subject to arbitration. Therefore, dismissal of the case with prejudice after compelling arbitration of Rimel's individual claims is appropriate.

**V.     RECOMMENDATION**.

It is **RESPECTFULLY RECOMMENDED** that the Court **GRANT** Defendants' Motion To Compel Arbitration And Strike Class Action Allegations (Doc. No. 23), **STRIKE** the class

action allegations from the amended complaint, **COMPEL** Rimel to submit his individual claims to arbitration and, thereafter, **DISMISS** this case with prejudice.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 4, 2016.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy