UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ROBERT RIMEL,**

        **Plaintiff,**

v.                                                                                                                           Case No:  6:15-cv-2191-Orl-41CEM

**UBER TECHNOLOGIES, INC and
RASIER LLC,**

        **Defendant.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant Uber Technologies, Inc. and Rasier LLC's Motion to Compel Arbitration and Strike Class Action Allegations ("Motion to Compel," Doc. 23). United States Magistrate Judge Karla R. Spaulding submitted a Report and Recommendation ("R&R," Doc. 61), in which she recommends that the Motion be granted. Plaintiff filed an Objection (Doc. 62), to which Defendants filed a Response (Doc. 66). After an independent *de novo* review of the record, the R&R will be adopted and confirmed.

**I.   FACTUAL BACKGROUND**

Defendant Uber Technologies, Inc. ("Uber") is a Delaware corporation with its principal place of business in San Francisco, California. (Am. Compl., Doc. 7, ¶ 7). Uber is the creator of a passenger transportation service that connects riders and drivers through a cellular phone application (the "App"). (*Id.*; Colman Decl., Doc. 23-1, ¶ 3). When a rider uses the App to request transportation services, the customer's request is routed to an available Uber driver to pick up and transport the customer to their desired destination. (Doc. 7 ¶ 7; Doc. 23-1 ¶ 3). The customer then

pays a fare through the App, and the Uber driver is paid directly by Uber for eighty percent of the fare collected from the customer. (Doc. 7 ¶¶ 14, 29).

Defendant Rasier, LLC is a Delaware limited liability company and Uber's wholly-owned subsidiary. (*Id.* ¶ 8; Doc. 23-1 ¶ 2).[1] Rasier contracts with Uber drivers in Florida using the UberX platform. (Doc. 23-1 ¶ 2). Any individual who wishes to access the UberX platform must first enter into the Rasier Software Sublicense & Online Services Agreement (the "Services Agreement," Ex. C to Coleman Decl., Doc. 23-1). (*Id.* ¶ 5). To enter into the Services Agreement and gain access to the platform, the individual must first login to the App using a unique username and password. (*Id.* ¶ 6). After completing the sign-up process, they are able to review the Services Agreement by clicking a hyperlink presented on the screen within the App. (*Id.* ¶ 7). The individual is free to spend as much time as they wish reviewing the Services Agreement. (*Id.*).

To advance past the screen with the hyperlink to the document, the individual is required to click "YES, I AGREE" to the Services Agreement. (*Id.*). After clicking "YES, I AGREE," they are prompted to confirm acceptance a second time. (*Id.*). After clicking "YES, I AGREE" a second time, the individual can access the App, and the Services Agreement is automatically and immediately in the individual's Driver Portal[2] where he or she can access it at any time. (*Id.* ¶ 8). When a new version of a Services Agreement is issued, an Uber driver cannot gain access to the UberX platform unless he or she affirmatively accepts the new version of the Services Agreement in the manner discussed above. (Colman's Supp. Decl., Doc. 49-1, ¶ 2).

---

[1] Rasier is Uber's equivalent for purposes of this action. Therefore, except where necessary, the Court refers to Uber and Rasier collectively as "Uber."

[2] "The Driver Portal stores information (particular to each driver) regarding the services provided by that driver through Uber's various platforms." (Doc. 23-1 ¶ 12).

The Services Agreement contains an arbitration provision ("Arbitration Provision") that requires Uber drivers to arbitrate, on an individual basis, all disputes arising out of or related to their relationship with Uber. (Doc. 23-1 at 22). Importantly, the Arbitration Provision contains a delegation clause ("Delegation Clause"), which purports to delegate any threshold arbitrability issues to an arbitrator. (*Id.*). If an Uber driver does not wish to arbitrate his or her claim against Uber, he or she can opt out of the Arbitration Provision within thirty days of accepting the Services Agreement. (*Id.* at 25).

In November 2014, Plaintiff Robert Rimel, a citizen of Orange County, Florida, became an UberX driver. (Doc. 7 ¶¶ 6, 16; Doc. 23-1 ¶ 10). He alleges that Uber exploits "hard-working drivers" like him who "are the lifeblood of the company" by: (1) deceiving drivers regarding the amount of money they can earn, (2) misappropriating tips that customers allocate to the drivers, and (3) misclassifying drivers as independent contractors rather than employees. (Doc. 7 ¶¶ 1–4, 14–43). Therefore, Plaintiff filed a putative class action against Uber asserting state law claims for: tortious interference with prospective business relations (Count I), breach of contract (Count II), unjust enrichment (Count III), conversion (Count IV), unfair competition (Count V), fraudulent misrepresentation (Count VI), and violations of the Florida Minimum Wage Act, Fla. Stat. § 448.110 (Count VII). (*Id.* ¶¶ 54–91).

Uber contends that Plaintiff's claims are subject to the Arbitration Provision contained in Uber's November 2014 Services Agreement. Therefore, Uber moves for the entry of an order dismissing this action, or alternatively, staying all proceedings unless and until Plaintiff fulfills his contractual obligation to arbitrate his individual claims. (Doc. 62 at 7–12). Additionally, Uber moves to strike Plaintiff's class action allegations from the Complaint. (*Id.* at 12–14). Plaintiff mounts several arguments in opposition to Uber's Motion to Compel.

Plaintiff does not dispute that he initially entered into Uber's November 2014 Services Agreement and that he failed to opt out of the Arbitration Provision within thirty days. Instead, Plaintiff argues that he entered into Uber's superseding Services Agreement on December 11, 2015, and that he exercised his right to opt out of the Arbitration Provision within thirty days. (Resp. to Mot. to Compel, Doc. 28, at 4–5). Plaintiff further argues that the Arbitration Provision is governed by California law and that: (1) the Delegation Clause is not clear and unmistakable; (2) the Arbitration Provision and Delegation Clause are procedurally and substantively unconscionable; and (3) the Arbitration Provision is unenforceable because the prohibition against private attorney general actions violates California public policy. (*Id.* at 6–22).

Upon review of the record, the Magistrate Judge concluded that Plaintiff had accepted only the June 2014 Services Agreement and failed to opt out of the Arbitration Provision within thirty days. (R&R at 6–9). The Magistrate Judge further concluded that: (1) Florida law, not California law, applies to the Arbitration Provision (*id.* at 9–10); (2) the Arbitration Provision and the Delegation Clause are not unconscionable (*id.* at 10–14); (3) the terms of the Delegations Clause are clear and unmistakable (*id.* at 14–15); and (4) the class action waiver in the Arbitration Provision should be enforced (*id.* at 16). As such, the Magistrate Judge recommends that the Court grant Uber's Motion. (R&R at 16–17). Plaintiff objects to the Magistrate Judge's recommendation.

## II.     LEGAL STANDARDS

### A.     Objections to a Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1), when a party makes a timely objection, the Court shall review *de novo* any portions of a magistrate judge's report and recommendation concerning specific proposed findings or recommendations to which an objection is made. *See also* Fed. R. Civ. P. 72(b)(3). *De novo* review "require[s] independent consideration of factual issues based on

the record." *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B.     Motion to Compel Arbitration

In general, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforceability of arbitration provisions in contracts involving transactions in interstate commerce. *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). Under the FAA, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quotation omitted). Arbitration agreements are presumptively valid and enforceable. *See* 9 U.S.C. § 2. However, arbitration under the FAA is ultimately "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and parties opposing arbitration can challenge the formation and validity of a contract containing an arbitration clause. It is well-settled, however, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted). Therefore, in determining whether to compel arbitration, courts engage in a limited review to determine whether the dispute is arbitrable. *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *4–5 (M.D. Fla. Apr. 18, 2007).

Importantly, "parties are generally free to structure their arbitration agreements as they see fit." *Volt*, 489 U.S. at 479. Parties may decide, for instance, to delegate "threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). "The Supreme Court has upheld these so-called

delegation provisions as valid, and explained that they are severable from the underlying agreement to arbitrate." *Id.* (internal quotations and citation omitted). "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review his claim because it has been committed to the power of the arbitrator." *Id.* "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision as valid . . . and must enforce it . . . , leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 1146–47 (quotation omitted). Courts should not, however, "assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 1147 (quotation omitted).

### III.  ANALYSIS

In his Objection, Plaintiff does not challenge the Magistrate Judge's finding that the Arbitration Provision and Delegation Clause are enforceable under Florida Law.[3] Instead, Plaintiff contends that the Delegation Clause and the Arbitration Provision are unenforceable under California law and that the Magistrate Judge erred by not applying the California choice of law provision contained in the Services Agreement.

#### A.    The Arbitration Provision is governed by Florida Law

In the R&R, the Magistrate Judge found that under the rules of severability Florida law applies to the Arbitration Provision because the Arbitration Provision is a separate and distinct contract, isolated from other terms in the Services Agreement, including the California choice of law clause. (*See* Doc. 61 at 9–10). Plaintiff contends that the Magistrate Judge's "decision hinged on an erroneous interpretation and misapplication of the severability rule." (Doc. 2 at 3). In

---

[3] Plaintiff also does not challenge the Magistrate Judge's finding that he only accepted the June 21, 2014 Services Agreement.

support, Plaintiff cites a slew of cases in which courts purportedly applied the law supplied by an agreement's choice of law clause to evaluate the enforceability of an arbitration provision in a separate section of the same agreement. (*Id.* at 10–12 & n.4). The Court is unpersuaded.

The Magistrate correctly found that Florida law applies to the Arbitration Provision. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Likewise, the severability rule is extended to delegation clauses within an arbitration provision. *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Such clauses are considered additional, antecedent agreements that are severable from the remainder of the arbitration agreement. *Id.*

Applying Supreme Court jurisprudence to the facts of this case, the Court finds that the Arbitration Provision is severable from the Service Agreement. Indeed, the severability of the Arbitration Provision is reflected in the integration clause, which states: "This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement." (Doc. 23-1 at 25). Therefore, the Service Agreement's California choice of law provision has no effect on the Court's determination of the conscionability of the Arbitration Provision, and the Arbitration Provision has no choice of law provision.

As the Magistrate Judge noted, in diversity cases, such as this one, federal courts apply the choice of law rules of the forum state. *Suarez v. Uber Tech., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016). In the absence of a choice of law provision, the *lex loci contractus* doctrine applies. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). Under that doctrine, a contract is governed by the law of the state in which the contract is made or is to be performed. *Id.* Plaintiff does not dispute that he accepted Uber's

Services Agreement and the underlying Arbitration Provision in Florida. Therefore, the Magistrate Judge correctly found that Florida law applies to the Arbitration Provision.

Although Plaintiff finds this application of the severability rule "absurd" and "nonsensical" numerous courts have reached the same conclusion. *See Zawada v. Uber Techs., Inc.*, No. 16-CV-11334, 2016 WL 7439198, at *6 (E.D. Mich. Dec. 27, 2016); *Micheletti v. Uber Techs., Inc.*, No. 15-1001 (RCL), 2016 WL 5793799, at *4 (W.D. Tex. Oct. 3, 2016); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658, 663–64 (N.D. Ohio 2016); *Suarez*, 2016 WL 2348706, at *4; *Varon v. Uber Techs., Inc.*, No. MJG-15-3650, 2016 WL 1752835, *3 (D. Md. May 3, 2016); *Sena v. Uber Techs., Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445, *4 (D. Ariz. Apr. 7, 2016). Despite Plaintiff's arguments to the contrary, the cases he cited in his Objection do not undermine the Court's decision to analyze the Arbitration Provision as an agreement severable and independent from the Services Agreement. Indeed, none of Plaintiff's cases address the effect of the express integration clause contained in the Arbitration Provision or the specific choice of law issue currently before the Court. Accordingly, the Court finds that Florida law applies to the Arbitration Provision, not California law.

Plaintiff does not challenge the Magistrate Judge's finding that the Arbitration Provision and its Delegation Clause are valid and enforceable under Florida Law. Finding no clear error, the Magistrate Judge's recommendation to grant Uber's Motion to Compel is due to be adopted and confirmed. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (explaining that in the absence of specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (quotation omitted)). Although the R&R is due to be adopted and confirmed,

for reasons provided below, the Court notes that its decision would not be altered even if California law did apply.

### B.     The Delegation Provision is clear and unmistakable under California Law

The Delegation Clause contained in the Services Agreement provides:

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.

(Doc. 23-1 at 22 (bolding omitted)).

Plaintiff first argues that the Delegation Clause is not clear and unmistakable because it conflicts is with the Services Agreement's forum-selection clause, which requires that "'*any* disputes, actions, claims or causes of action arising out of or in connection with this Agreement . . . *shall* be subject to the *exclusive jurisdiction* of the state and federal *courts*' in San Francisco." (Doc. 62 at 16 (quoting Doc. 23-1 at 27)). In support, Plaintiff relies heavily on *Mohamed v. Uber Technologies, Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015), in which a California district court held that similar language rendered a delegation provision unclear and mistakable. However, the district court's determination has been reversed by the Ninth Circuit Court of Appeals. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016).

The Ninth Circuit concluded that the conflicts the district court identified were "artificial" because "[t]he clause describing the scope of the arbitration provision is prefaced with '[e]xcept as it otherwise provides,' which eliminated the inconsistency [with] the general delegation provision." *Id.* at 1209. The Ninth Circuit reasoned:

> [N]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to

> obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies. It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration agreement.

*Id.* (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004)).

Courts examining identical or substantially similar Service Agreements have consistently reached the same conclusion. *See*, *e.g.*, *Mumin v. Uber Techs., Inc.*, No. 15-CV-6143 (NGG) (JO), 2017 WL 934703, at *9 (E.D.N.Y. Mar. 8, 2017); *Congdon v. Uber Techs., Inc.*, No. 4:16-cv-02499-YGR, Doc. 65, at 5 (N.D. Cal. Dec. 8, 2016); *Micheletti*, 2016 WL 5793799, at *4; *Suarez*, 2016 WL 2348706, at *4; *Varon*, 2016 WL 1752835, at *6; *Sena*, 2012 WL 1376445, at *3–4. Accordingly, the Court therefore finds no conflict between the unambiguous language of the Delegation Clause and the Service Agreement's forum selection clause. The Delegation Clause clearly and unmistakably delegates questions of arbitrability to the arbitrator.

      **C.**    **The Delegation Clause is not unconscionable under California law.**

Plaintiff argues that the Delegation Clause is substantively unconscionable because "it would subject Rimel to hefty fees of a type he would not face in court." (Doc. 62 at 17). This argument lacks merit. An arbitration agreement may be substantively unconscionable if it "require[s] the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 110–11 (Cal. 2000), *abrogated in part on another grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–340 (2011); *see also Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (holding that excessive arbitration costs may preclude litigants from effectively vindicating their rights).

Here, Plaintiff offers no evidence to buttress his conclusory assertion that arbitration would subject him to "hefty fees of a type he would not face in court." (Doc. 62 at 17). The Arbitration Provision provides that "[e]ach party will pay the fees for his . . . own attorneys" but that "[Defendants] will pay the Arbitrator's and arbitration fees." (Doc. 23-1 at 24). Therefore, Plaintiff may not have to bear any fees or expenses beyond what he would have had to pay to pursue this action in court. Moreover, as the Magistrate Judge noted, Plaintiff can raise objections to any fees he is required to pay to the arbitrator, who may resolve those issues when the amount to be paid is no longer speculative. Accordingly, Plaintiff's argument that the Delegation Clause is substantively unconscionable lacks merit.

Plaintiff also contends that the Delegation Clause is procedurally unconscionable because it is "hidden in Uber's prolix" Service Agreement. (Doc. 62 at 17 (quotation omitted)). In support of his contention, Plaintiff relies exclusively on the reversed district court case in *Mohamed*. This argument also lacks merit.

"[T]he threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed*, 848 F.3d at 1211 (quotation omitted). "[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006). "[T]he existence of a meaningful right to opt-out of arbitration necessarily renders the arbitration clause (and the delegation clause specifically) procedurally conscionable as a matter of law." *Mohamed*, 848 F.3d at 1210 (quotation omitted). Here, Plaintiff had the absolute right to opt out of the Arbitration Provision within thirty days after he accepted it on November 8, 2014. In fact, the opt-out clause was prominently displayed in bold typeface in the Services Agreement, and the mechanism for opting out was

straightforward and simple to accomplish. (*See* Doc. 23-1 at 25). Accordingly, the Court finds that the Service Agreement is not adhesive or procedurally unconscionable as a matter of law.

    **D. The Arbitration Provision is not unconscionable.**

    Plaintiff argues that the Arbitration Provision is unconscionable because it runs afoul of the National Labor Relations Act ("NLRA") and FAA by requiring drivers to resolve all disputes in arbitration "on an individual basis" only and not by way of "class, collective, or representative action." (Doc. 62 at 22 (quotation omitted)). Plaintiff's argument is premised on the Seventh Circuit's holding in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016),[4] which held that an arbitration provision that precludes collective arbitration or collective action in any other forum violates an employee's statutory right to engage in concerted activity under Sections 7 and 8 of the NLRA and is also unenforceable under the FAA.[5]

    The Second, Fifth, and Eighth Circuits have rejected the rationale behind the *Lewis* decision. *See Patterson v. Raymours Furniture Co.*, 659 F. App'x 40, 43 (2d Cir. 2016) (collecting cases). The Ninth Circuit is the only other court of appeals to hold that class waivers may violate the NLRA. *See Morris v. Ernst & Young, LLP*, 834 F.3d 975, 986 (9th Cir. 2016) (holding that mandatory waiver of concerted actions as a condition of employment is impermissible). The Ninth Circuit has held, however, that an opt-out right prevents any NLRA violation because it renders the waiver voluntary. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075–76 (9th

---

[4] EPIC Systems filed a Petition for Certiorari with the United States Supreme Court, which was granted on January 13, 2017. *See Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017).

[5] Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 enforces Section 7 by deeming that it "shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." *Id.* at § 158(a)(1).

Cir. 2014) (explaining that there is no "basis for concluding that [the defendant] interfered with or restrained [the plaintiff] in the exercise of her right to file a class action" because "[i]f she wanted to retain that right, nothing stopped her from opting out of the arbitration agreement"); *see also Morris*, 834 F.3d at 982 n.4.

Notably, in *Lewis*, the arbitration agreement did not include an opt-out clause, and the Seventh Circuit expressly declined to decide the effect of an opt-out clause on the enforceability of a class action waiver. Consequently, in cases where Uber moved to enforce similar arbitration agreements containing an opt-out clause, numerous district courts have distinguished *Lewis*, concluding that the arbitration provision's prohibition against class actions did not violate the NLRA because the plaintiff could have easily opted out. *See*, *e.g.*, *Kai Peng v. Uber Techs., Inc.*, No. 16-CV-545 (PKC) (RER), 2017 WL 722007, at *17 (E.D.N.Y. Feb. 23, 2017); *Singh v. Uber Techs. Inc.*, No. 16-3044 (FLW), 2017 WL 396545, at *10 (D.N.J. Jan. 30, 2017); *Scroggins v. Uber Techs., Inc.*, No. 1:16-cv-01419 2017 WL 373299, at *2 (S.D. Ind. Jan. 26, 2017); *Zawada*, 2016 WL 7439198, at *10; *Bruster v. Uber Techs., Inc.*, No. 15-CV-2653, 2016 WL 4086786, at *2 (N.D. Ohio Aug. 2, 2016).

Like the plaintiffs in the cases cited above, Plaintiff was not required to arbitrate his claims as a condition of employment. He had an absolute right to opt out of the Arbitration Provision within thirty days from entering into the Services Agreement. Therefore, the Magistrate Judge correctly found that *Lewis* is distinguishable and that the Arbitration Provision is not substantively unconscionable based on the class-action waiver.

### E.    The Court May Not Decide Whether the Arbitration Provision Violates California Public Policy.

Finally, Plaintiff argues that because the Arbitration Provision contains a waiver of claims under California's Labor Code Private Attorneys General Act of 2004 ("PAGA") it is

unenforceable on public policy grounds. This argument also fails. Under the Delegation Clause, the parties clearly and unmistakably agreed that an arbitrator must resolve all "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." (Doc. 23-1 at 22 (explaining that "[a]ll such matters shall be decided by an [a]rbitrator and not by a court or judge")).

Accordingly, if California law applied, which it does not, all of Plaintiff's challenges to the terms of the Arbitration Provision, including PAGA waivers, would have to be "adjudicated in the first instance by an arbitrator and not in court." *See Mohamed*, 848 F.3d at 1212 (holding that that district court erred by address a plaintiff's challenges to the enforceability and severability of the PAGA waiver in the 2014 Agreement because those challenges "fall to the arbitrator to decide"); *see also Micheletti*, 2016 WL 5793799, at *7.

### IV.   CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 61) is **ADOPTED** and **CONFIRMED** and made a part of this Order**.**

2. Defendants' Motion to Compel and Strike Class Action Allegations (Doc. 23) is **GRANTED**.

3. The parties shall proceed to arbitration within **thirty days** of this Order. This action shall be **STAYED** until such time as the parties' arbitration proceedings have been completed.

4. On or before **July 14, 2017**, and **every ninety days** thereafter, the parties shall file a status report as to the status of the arbitration. Additionally, within **ten days** of the termination of the arbitration proceedings, the parties shall notify the Court.

5. The Clerk is **DIRECTED** to administratively close the file, subject to the right of any party to apply to reopen the action upon good cause shown.

**DONE** and **ORDERED** in Orlando, Florida on March 31, 2017.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record